**Donald A. Vaughn, Esq (Bar No. 110070)**
**Evan J. Topol Esq. (Bar No. 274932)**
**VAUGHN & VAUGHN**
**501 West Broadway, Suite 1770**
**San Diego, CA  92101**
**Tel: (619) 237-1717**
**Fax: (619) 237-0447**

Attorneys for Creditor JACK SCHINDLER

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO

| | |
|---|---|
| In re<br><br>JESSE WAYNE DAWBER,<br><br>    Debtor-In-Possession.<br><hr>JESSE DAWBER, an individual<br><br>Case No. 18-06044-LT11<br><br>CLASS WAR, INC., a California corporation,<br><br>Case No. 19-00293-LT11<br><br>    Debtors.<br><br>[X] Affects both Debtors.<br>[ ] Affects Class War, Inc. only.<br>[ ] Affects Jesse Dawber only. | Case No. 18-06044-LT11<br><br>Chapter 11<br><br>[Jointly Administered with Case No. 19-00293-LT11]<br><br>**OBJECTION TO FORCE 10 PARTNERS MONTHLY FEE STATEMENT #4 FOR THE PERIOD FROM JUNE 1, 2019 THROUGH JUNE 30, 2019**<br><br>Judge: Hon, Laura Taylor<br>Dept.: 3, Room 129 |

Creditor Jack Schindler ("Schindler") hereby objects to the above-referenced Monthly Fee Statement for the reasons explained in detail below:

///

1

# I.

# INTRODUCTION

Force 10/Mr. Rosenthal have been employed by Class War since **November 9, 2018** – when Drew Madacsi hired them. (See Exhibit 2 to First Day Declaration of Jeremy Rosenthal [Dkt. 5 in Class War Bankruptcy case number 19 – 293].)

Even before Class War filed its Chapter 11 Petition, Debtor Jesse Dawber sought the Court's blessing on Mr. Rosenthal's employment as sole director, sole officer, and Chief Restructuring Officer for Class War through a motion seeking approval of Post-Petition Shareholder and Director Resolutions. [Dkt. 41]. Schindler opposed Dawber's petition. [Dkt. 64]. On January 24, 2019 the Court denied as unnecessary Dawber's motion with respect to the post-petition resolutions. [Dkt. 112]

On February 25, 2019, Debtor Class War filed a motion seeking an Order approving the employment of Force 10 Partners (Jeremy Rosenthal) and authorizing monthly fee statement and payment procedures. [Dkt. 151]. Schindler opposed Class War's Motion to retain Force 10. [Dkt. 176]. On April 17, 2019, the Court overruled Schindler's objection and granted the Motion, implementing the procedure whereby Force 10 would file and serve a report of compensation earned and expenses incurred for the previous month, affording all parties with standing before the Court ten days from service of the Fee Statement to object. [Dkt. 243.]

On July 11, 2019, Class War served the Force 10 Partners notice of monthly fee statement covering the period from June 1, 2019 through June 30, 2019. [Dkt. 323.] Schindler objects to any payment of said fees for the reasons set forth below.

///
///
///
///

OBJECTION TO FORCE 10 PARTNERS MONTHLY FEE STATEMENT FOR JUNE 2019

## II.

## FORCE 10'S SERVICES DO NOT MEET THE STANDARDS REQUIRED BY 11 U.S.C. SECTION 330

In *In re Knudsen Corp.* 84 BR 668 (B.A.P. 9th Cir. 1988), the Bankruptcy Appellate Panel of the Ninth U.S. Circuit Court of Appeals held that it was permissible for a Bankruptcy Court to authorize (non-final) fee payment to professionals on a summary application procedure, allowing them to receive compensation each month without prior court approval. This Court's Order in the instant matter [Dkt. 243] was entered in accord with this authority.

As the Court determined on Friday, July 19, 2019, however, fraudulent conduct by the Debtors required an immediate suspension of these *Knudsen* Orders. Thus, although a formal order on the subject has not yet been signed, it is respectfully submitted that the authority under which Force 10 would be allowed to follow the summary monthly application procedure has vanished and, for this reason alone, payment of the fees claimed by this applicant for the month of June, 2018, must be denied.

Substantively, however, the recent revelations explained to this Court by its Examiner reveal that Force 10's services do not satisfy the requirements of 11 U.S.C. section 330 and, therefore, no further compensation should be payable to this consultant.[1] Specifically, 11 U.S.C. section 330 provides, in pertinent part:

> (a)(3) in determining the amount of reasonable compensation to be awarded to [a] … professional persons, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;

---

[1] By this phraseology, Schindler by no means infers that Force 10 should be entitled to retain the fees it has already milked from this Estate. In fact, at the appropriate time, it is respectfully submitted that disgorgement of Force 10's exorbitant fees ***in excess of the $300,000 already paid to them*** will be appropriate.

3

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or
(ii) services that were not--
    (I) reasonably likely to benefit the debtor's estate; or
    (II) necessary to the administration of the case.

In taking these factors into account, and in light of all other relevant considerations, Force 10 is not entitled to the money it seeks in this instance, and frankly did not legitimately earn what it has already been paid.

Specifically, Force 10 was hired November 9, 2018 – in a contract signed by none other than Drew Madacsi. Arent Fox, representing dishonest debtor Dawber, brought Mr. Rosenthal on board and, indeed, Mr. Rosenthal and Arent Fox admittedly have an ongoing relationship in other cases as well as this one. Thus, the involvement of Force 10 was tainted from the beginning, as established by the evidence obtained and revealed by this Court's Examiner.[2]

---

[2] See Exhibit 17 to 2004 examination of Jeslyn Leong, documenting Madacsi, Leong, and Arent Fox arranging for STFU to wire $250,000 into the Arent Fox trust account as ***the first installment*** of a $700,000 loan to be used "solely for legal expenses."

4

The Declaration of Trust appended to the Examiner's Preliminary Report as Exhibit A – as the Court inquired at the hearing on Friday, July 19, 2019 – ***was actually in Class War's records the entire time***. Mr. Finlayson found it in less than two weeks; Mr. Rosenthal <u>never</u> found it in over seven months despite assuring this Court that he was diligently reviewing Class War's records and investigating whether or not it had potential avoidance actions. Clearly, Class War did not come close to getting what it paid Mr. Rosenthal $600 per hour to do.

According to Class War's Balance of Schedules filed February 6, 2019, Force 10 was paid **$134,666.37** for its work with Class War while the Dawber Petition was pending, and before Class War filed its Chapter 11 Petition – not bad for two months work. [See page 11 of Dkt. 26 in Class War case.] With the latest sum requested of $20,970, Force 10 will have billed **$175,977.50** post-Petition. Adding these two figures together takes the total paid to Force 10 **over $300,000** – for what? The only tangible "result" is a minuscule "license" Mr. Rosenthal so proudly negotiated with none other than STFU, and which has produced less in royalties from the company we now know Mr. Dawber secretly owns than the monthly bills of the Debtors' professionals. What benefit did these Estates obtain where "professionals" like Force 10 do nothing other than consume hundreds of thousands of dollars and leave no funds for distribution to creditors?

Thus, in considering whether Force 10's services were necessary or beneficial to the case, or demonstrated skill or experience in the bankruptcy field, the resounding answer is "no." Clearly, the Court should not allow this compensation because these services were not reasonably likely to benefit the Debtors' estate nor necessary to the administration of the case. In fact, they were actually detrimental.

Specifically, here is what the Bankruptcy Estates got from Force 10 in exchange for nearly a third of a million dollars: (1) Class War gave away its intellectual Property for no consideration whatsoever under Mr. Rosenthal's

watchful eye by virtue of the *Nunc Pro Tunc* Assignment executed by Mr. Madacsi on November 15, 2018 – **after** Mr. Rosenthal was hired.  Mr. Rosenthal told the Court that he was "continuing to evaluate" whether this transaction could be avoided.  Six months later, no action was taken, despite Schindler urging that the matter be pursued, (2) a bad faith Joint Plan of Reorganization was filed and signed by Jeremy Rosenthal proposing to put fraudster Jesse Dawber back in control and paying his secret company STFU $250,000 as an allowed claim, (3) an Amended Proposed Plan of Reorganization signed by Mr. Rosenthal on April 18, 2019, was filed to similar effect, (4) an opposition to Schindler's Motion for Appointment of a Trustee or Examiner was filed by Class War which took issue with Schindler's assertion Mr. Rosenthal would never pursue avoidance claims.

Here is what Class War's Opposition filed April 9, 2019 [Dkt. 223] says on page 12:

> Mr. Rosenthal has responsibly testified that many of the transactions at issue are not actually *transfers* of an estate interest in property and that Class War "may not be able to seek to avoid" such transactions.

Class War's Opposition relied heavily on Mr. Rosenthal's Declaration that Class War was negotiating a potential post-confirmation domestic license of Class War's Intellectual Property (to the extent any remained) *to Faction* and that it is Mr. Rosenthal's view that "Mr. Roberts is uniquely positioned to maximize the value of Class War's Intellectual Property."  [Dkt. 223, p. 22, lines 21-22.]  Mr. Rosenthal's opposition Declaration further indicated that "Mr. Roberts has preliminarily agreed to enter into a new license directly with Class War at a rate above Class War's current royalty rate with STFU Global Pte. Ltd. ("STFU")."  [*Id.* at lines 25 – 27.]  In order to pursue this fabulous opportunity, Mr. Rosenthal's view was that "entering into a license agreement with Mr. Roberts **will necessitate compromising the estate's claims against him and Faction**."  [Id at page 23, lines 1–3; emphasis added.]    In fact, Class War's Opposition actually

foreshadowed Schindler's concern that the co-conspirators in this fraud will nevertheless end up with the assets they stole, by manipulating the process so that their illegal activities will in essence be absolved. Here is what Class War's Opposition said on that subject:

> In the event that at the joint–plan auction STFU provides the highest value as licensee for some or all of Class War's Intellectual Property, then **Mr. Rosenthal similarly expects that STFU will seek to compromise the estate's claim against it as part of its license**. [Dkt. 223, p. 13, lines 24 – 27; emphasis added.]

Class War's Opposition to Schindler's Motion which resulted in appointment of the Examiner also told the Court:

> It is time to recognize the obvious: Mr. Schindler has done more investigation of this debtor and its affiliates, more investigation of the underlying transactions – **all fully disclosed post – petition and authenticated by Mr. Rosenthal in his First Day and March 11th Declarations** – than a Chapter 11 Trustee is likely to be able to accomplish… Mr. Schindler continues to rehash pre-petition conduct **and has failed to identify *any* post-petition mismanagement or fraud.** (*Id.* at p. 14, lines 12 – 18; emphasis added.)

We all know, now that the truth has come to light, it is not Mr. Schindler who was wildly off track, but Mr. Rosenthal who did his best to cooperate (unknowingly – he says) with the fraudulent conduct which has now been proven to this Court. Clearly, the evidence establishes that, at the very least, Mr. Rosenthal indefensibly turned a blind eye toward the fraud he so emphatically denied – even ridiculed. In other words, ineptitude is the most charitable, but certainly not the only, explanation.

Specifically, Mr. Rosenthal's opposition Declaration tells the Court that his statements are based upon his "review of relevant documents" and/or "my opinion based upon my experience and knowledge of the Debtor's operations and financial conditions." [Dkt. 223 p. 20.] Mr. Rosenthal even tells the Court that an appeal of the judgment in Schindler's favor is well taken and should be pursued – although he

knows absolutely nothing about the case. [*Ibid*.] Why would someone advocate so strongly for something they know nothing about if they were actually objective? The obvious answer is, they wouldn't do so.

In paragraph 5 of his opposition Declaration, Mr. Rosenthal tells the Court that in his "business judgment" it is in the best interest of Class War and its creditors to pursue the Joint Plan (which has now been withdrawn based upon the underlying fraud) in conjunction with Mr. Dawber personally. In paragraph 6, Mr. Rosenthal tells the Court just how much money could be generated by the licensing model; curiously, this precise methodology was supplied to Mr. Rosenthal by, again, Drew Madacsi. In paragraph 8, Mr. Rosenthal says they are "still evaluating" potential preference actions and, in paragraph 11, urges that it is a fantastic idea for Class War to work **with** Faction and STFU. Finally, in paragraph 12, Mr. Rosenthal concludes with an assentation that he is not a party to any conspiracy to impair or ignore valuable estate assets. All of this is difficult to accept in light of the recent revelations.

Specifically, Mr. Rosenthal was examined by Jesse Finlayson on July 8, 2019. One of the issues upon which he was questioned focused upon Mr. Rosenthal permitting Mr. Madacsi to execute the *Nunc Pro Tunc* Assignment giving away Class War's intellectual property to STFU in exchange for no consideration.[3] Mr. Rosenthal testified that he was still (now over seven months later) evaluating whether or not that was a proper transaction and that he had permitted this to occur because Drew Madacsi sent him (Rosenthal) an e-mail from lawyers which expressed the opinion that assigning this intellectual property to STFU was required. While sitting by and watching Drew Madacsi give away the farm is difficult enough to explain, there are other very serious questions about Mr. Rosenthal's conduct.

---

[3] Mr. Schindler's counsel does not have a copy of the Rosenthal 2004 Examination conducted by Mr. Finlayson. Schindler's counsel was, however, present at the Rosenthal Examination and the representations herein are based upon good faith recollection of the proceedings.

8

First, as this Court will recall from the hearing on Friday, July 19. 2019, the "Declaration of Trust" whereby Jeslyn Leong holds the entirety of STFU shares in trust for Mr. Dawber was in Class War's own files. That is where Examiner Finlayson told the Court he ultimately located the document. If Mr. Finlayson was able to locate this document in a couple of weeks, why is it that Mr. Rosenthal never found it despite telling this Court on innumerable occasions that he was qualified to give declarations because he had reviewed the records of Class War and was knowledgeable thereon? One would think that paying over $300,000 would at least be adequate to obtain a review of Class War's own documentation.

Mr. Rosenthal certainly had no difficulty expressing opinions *favorable* to Mr. Dawber concerning what Class War should do in terms of signing on to the fraudulent Joint Plan, or entering into a license with STFU (which Mr. Dawber secretly owns) or Faction (run by Matt Roberts which took over Class War's business). Perhaps his investigation of Class War's books and records was selective or cursory; in either instance, should this estate pay over $300,000 for such slipshod conduct which, as Schindler objected from the very beginning, was rendered by an individual with no experience whatsoever in the apparel industry nor in actually running a business. The answer is "no," and this Bankruptcy Court should not for one moment countenance the dissipation of valuable estate money legitimately payable to creditors by compensating a retired Bankruptcy lawyer in his new chosen field in which he is either inept or worse.

Even this, however, is not the end of it. As this Court may recall, on November 15, 2018, Schindler filed a Motion for Appointment of a Trustee or Examiner in the Dawber case. Mr. Rosenthal provided a declaration in opposition to that Motion supporting the thesis that "Vaughn asked us to remove Madacsi, and we have done so, so no trustee should be appointed." This falsehood proffered to the Court among so many others resulted in this Court continuing the first Motion seeking Appointment of a Trustee, rather than granting it. The Court did so in

reliance upon the Dawber and Class War representation that "old management [Madacsi] is out." <u>This was false – and Mr. Rosenthal knew it at the time</u>.

Specifically, a large number of things coincided on November 29, 2018. On this day: (1) Mr. Rosenthal filed a declaration for Mr. Dawber in opposition to Schindler's first Motion seeking Appointment of a Trustee, (2) Mr. Dawber filed his Motion seeking approval of Shareholder Resolutions [purportedly having removed Mr. Madacsi two weeks earlier] and replacing him with Mr. Rosenthal, and (3) Mr. Rosenthal was copied on an e-mail *Drew Madacsi wrote as CEO of Class War* concerning additional documentation necessary to ensure Class War effectively transferred everything to STFU.[4]  What a moment; did Dawber not tell this Court that Madacsi had been removed from office back on November 15th with the Shareholder Resolutions which appointed Mr. Rosenthal? **That is exactly what they told the Court** yet, two weeks later, Drew Madacsi is corresponding with STFU on behalf of Class War and explicitly copying Mr. Rosenthal while he (Madacsi) is still acting as Class War CEO to ensure that Class War was divested of all intellectual property.  More than two weeks later, on December 14, 2018, Mr. Madacsi is <u>*still*</u> writing to Mr. Rosenthal – ***and Jesse Dawber*** – using his Class War email address (drew@classwarinc.com) and signing off as "Advisor" to Class War Inc.[5]  This type of conduct – telling the Court "Madacsi is out" while still working with him the very day those fraudulent representations were made – and weeks later – is indefensible and these startling revelations which soundly contradict the Rosenthal representations merit denial of any additional compensation to Force 10.

### III.
### CONCLUSION

Force 10 claims entitlement to more money which, if allowed, will increase the amount paid to this consultant to more than $300,000. The Estate herein got

---

[4] See Exhibit 20 to Madacsi 2004 Examination.
[5] See Exhibit 11 to Madacsi 2004 Examination.

nothing in return and, in fact, Mr. Rosenthal did his utmost to prevent the Court's Examiner from being appointed, to support the desires of dishonest Debtor Dawber, and to prevent Schindler from obtaining any of the relief which has revealed the pervasive fraud perpetrated upon the Court and creditors herein. In fact, the evidentiary record reveals that Mr. Rosenthal was complicit with the misrepresentations made to this Court – "Madacsi is out" – in order to prevent a trustee from being appointed early on in the case.  It is respectfully submitted that the concept more money should be paid for conduct like this is patently insane, and this Court should, therefore, sustain Mr. Schindler's objection to doing so.

                                        Respectfully submitted,

Dated: July 22, 2019           VAUGHN & VAUGHN

                            By:   /s/ DONALD A. VAUGHN
                                   Attorneys for JACK SCHINDLER

*In re Jesse Dawber, Case No. 18-06044-LT11*
*Jointly Administered with Case No. 19-00293-LT11*

## **PROOF OF SERVICE**

I, Tatiana Tomacelli, declare as follows:

I am a citizen of the United States and am employed in the County of San Diego, California. I am over the age of 18 and not a party to the within action. My business address is 501 West Broadway, Suite 1770, San Diego, California 92101. On July 22, 2019, I served the following document:

**OBJECTION TO FORCE 10 MONTHLY FEE STATEMENT #4 FOR THE PERIOD FROM JUNE 1, 2019 THROUGH JUNE 30, 2019**

on the parties in this action as follows:

Michael D. Breslauer on behalf of Debtor Class War, Inc.
mbreslauer@swss.com

John W. Cutchin
jcutchin@san.rr.com

Jesse S. Finlayson, Court-Appointed Chapter 11 Examiner
jfinlayson@ftrlfirm.com

M. Douglas Flahaut on behalf of Debtor Jesse Wayne Dawber
flahaut.douglas@arentfox.com

Lauren N. Gans on behalf of STFU Global PTE LTD
lgans@shensonlawgroup.com

Todd S. Garan on behalf of Creditor Bank of America
tgaran@aldridgepite.com

Aram Ordubegian on behalf of Debtor Jesse Wayne Dawber
ordubegian.aram@arentfox.com

Jonathan S. Shenson on behalf of STFU Global PTE LTD
jshenson@shensonlawgroup.com

Christopher K.S. Wong on behalf of Debtor Jesse Wayne Dawber
christopher.wong@arentfox.com

VAUGHN & VAUGHN

David A. Ortiz on behalf of the United States
david.a.ortiz@usdoj.gov

United States Trustee
ustp.region15@usdoj.gov

Tiffany L. Carroll
tiffany.l.carroll@usdoj.gov

Elizabeth C. Amorosi
Elizabeth.c.amorosi@usdoj.gov

[X]  **BY CM/ECF NOTICE OF ELECTRONIC FILING** by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth below as identified on the service list obtained from this Court on the Electronic Mail Notice List.

[ ]  **BY MAIL:** I am readily familiar with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business pursuant to Code of Civil Procedure §1013(a).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I executed this Proof of Service on July 22, 2019, at San Diego, California.

*Tatiana Tomacelli*
**Tatiana Tomacelli**

VAUGHN & VAUGHN

PROOF OF SERVICE