**Donald A. Vaughn, Esq (Bar No. 110070)**
**Evan J. Topol Esq. (Bar No. 274932)**
**VAUGHN & VAUGHN**
**501 West Broadway, Suite 1770**
**San Diego, CA 92101**
**Tel: (619) 237-1717**
**Fax: (619) 237-0447**

Attorneys for Creditor JACK SCHINDLER

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO

| | |
|---|---|
| In re | Case No. 18-06044-LT11 |
| | Chapter 11 |
| JESSE WAYNE DAWBER, | [Jointly Administered with Case No. 19-00293-LT11] |
| Debtor-In-Possession. | **OBJECTION TO HOGAN LOVELLS' MONTHLY FEE STATEMENT #3 FOR THE PERIOD FROM MAY 1, 2019 THROUGH MAY 31, 2019** |
| JESSE DAWBER, an individual | |
| Case No. 18-06044-LT11 | |
| CLASS WAR, INC., a California corporation, | Judge: Hon, Laura Taylor Dept.: 3, Room 129 |
| Case No. 19-00293-LT11 | |
| Debtors. | |
| [X] Affects both Debtors. [ ] Affects Class War, Inc. only. [ ] Affects Jesse Dawber only. | |

Creditor Jack Schindler ("Schindler") hereby objects to the entirety of the above-referenced Monthly Fee Statement, and contends Hogan Lovells is entitled to receive no sum whatsoever, for the reasons explained below:

1

# I.

## INTRODUCTION

On January 29, 2019, Debtor Jesse Dawber first filed an application for authority to employ Hogan Lovells US LLP as his special litigation/appellate counsel **(the "Dawber Application")**.  [Dkt. 122.]  Dawber told this Court the reason why Hogan Lovells was a great choice was because: "Hogan Lovells has represented the Debtor and Class War Inc. in the State Court Action since approximately May of 2017."  (See page 3, lines 21 – 23.)

The Dawber Application was supported by the declarations of Jesse Dawber and Michael Turrill.  The Turrill Declaration (commencing at Dkt. 122, page 11) attached as Exhibit 1, what Mr. Turrill described as "[A] true and correct copy of the Engagement Letter by and between Hogan Lovells and the Debtor…"[1]  At page 13 of the Dawber Application, the Turrill Declaration (in paragraph 10 at lines 7 – 9) says:

> Hogan Lovells currently is holding approximately $65,000 in its client trust account that it received from Class War on or about September 28, 2018 with respect to its representation of the Debtor and Class War.

September 28, 2018 was, of course, *three days* after the State Court Verdict, and the Dawber Application fails to mention that this "retainer," now depleted by $85,000, was originally in the sum of $150,000.[2]  The Dawber Application also omits to mention that Hogan Lovells received $184,841.70 for its services the previous day (i.e., September 27, 2018), taking the amount paid to Hogan Lovells post-verdict but pre-Dawber Petition (which was filed October 8, 2018) to an extraordinary sum just shy of **$335,000**.

Despite receiving this third of a million dollars just a few days after the State Court Verdict (never mind the previous hundreds of thousand dollars paid to Hogan

---

[1] This is untrue; see *post*.
[2] As explained below, the assertion this was an agreed "retainer" is also untrue.

Lovells), Mr. Turrill declared that:

> … Hogan Lovells may hold a pre-petition claim against the Debtor for legal services and expenses incurred in its representation of the Debtor in the State Court Action… (Dkt. 122, page 14 paragraph 14, lines 7 – 9.)

Mr. Dawber "may" owe Hogan Lovells more money?  They received a specific payment of $184,841.70 two days after the Verdict then, the next day, another $150,000?  Typically, lawyers pay their bills current before getting a retainer against *future* services.  Wouldn't an international law firm know by the end of January, 2019, how much it was owed, if anything, for services rendered more than four months earlier?  As explained below, Hogan Lovells was hedging its bet in case someone spotted the fact *it never had any legal services agreement with Mr. Dawber*.

On February 25, 2019, Class War filed ***its*** application to employ Hogan Lovells (**the "Class War Application"**).  [Dkt. 150.]  Class War's Application was supported by a declaration from Jeremy Rosenthal and, again, Michael Turrill.  The Application represents that "… Hogan Lovells is ***currently*** representing Mr. Dawber…"  (See page 9, lines 14 – 15; emphasis added.)  Dawber, however, had been a Debtor in bankruptcy since October 8, 2018, and this Court did not even hear any Application to employ Hogan Lovells until March 28, 2019.  The Turrill Declaration again makes the following inaccurate representation with respect to Exhibit 1 (the same Exhibit 1 appended to Mr. Turrill's declaration supporting the Dawber Application):

> A true and correct copy of the Firm's pre-bankruptcy Engagement Letter by and between Hogan Lovells, **Mr. Dawber** and Class War is attached… as Exhibit 1…  (Dkt. 150, page 15, paragraph 3; emphasis added.)

This time, the Turrill Declaration discloses that his firm's "retainer"      was indeed $150,000 "…with respect to its representation of the Debtor and Class War," and that it paid itself $58,400.81 out of this money for an invoice dated

November 16, 2018, and $24,743.09 on a bill dated January 15, 2019.  [Dkt. 150, page 18, paragraph 11.]  One cannot help but wonder how Hogan Lovells generated over $83,000 in fees/costs during the time the State Court Litigation was stayed but, as discussed below, there is indeed evidence it performed services during this period of time – in connection with backdating a purported resignation letter signed by Matt Roberts.  (See Exhibit 9 to Vaughn Declaration in Support of Objections to Fee Statements [Dkt. 340], pages 70 – 71; Vaughn Declaration, paragraphs 17 and 18.)

Finally, the Turrill Declaration supporting Class War's Application indicated that, in performing a conflict check, the following names were never checked for conflicts: (1) Drew Madacsi, (2) Jeslyn Leong, (3) Matt Roberts, (4) STFU, (5) Faction, (6) Lighthouse Strategic Group, (7) MMP Resources, (8) Alliance Brands Limited, or (9) the House of Machines.  (See Dkt. 150, page 19, paragraph 14.)  If Hogan Lovells represented one or more of these individuals or entities, a potential conflict of interest – or an actual conflict – might very well exist.  Indeed, a number of these individuals/entities have filed claims against one or more of the Estates and, in fact, Class War and Dawber have each filed a Proof of Claim in the other's bankruptcy case.  The Turrill Declaration concludes in paragraph 16 with the assertion that "… Hogan Lovells has no… prior connection with… any creditors of the Debtor or "his" Estate, or any other party in interest in this case…"  Drew Madacsi, however, testified in his 2004 examination that Hogan Lovells worked with him on a real estate transaction in Los Angeles, and that pre-existing relationship led him to bring them into the State Court Case.[3]

On February 28, 2019, Debtor Dawber filed an amended application to employ Hogan Lovells (**the "Amended Application"**).  [Dkt. 157.]  The Amended Application reiterated that "A true and correct copy of the pre-bankruptcy

---

[3] Again, Schindler's counsel was present at the Madacsi 2004 examination, but does not have a copy of the transcript thereof.

1  Engagement Letter, executed on May 14, 2017, by Hogan Lovells and the Debtor,

2  is attached to the Turrill Declaration as Exhibit "1." (See page 5, lines 3 – 5.)

3      On March 28, 2019, this Court heard the joint Applications to employ Hogan

4  Lovells and, on April 4, 2019, entered its Order permitting such employment on

5  terms specified therein. [Dkt. 214.]

6                                      **II.**

7      **HOGAN LOVELLS' SERVICES DO NOT MEET THE STANDARDS**

8            **REQUIRED BY 11 U.S.C. SECTION 330**

9      In *In re Knudsen Corp.* 84 BR 668 (B.A.P. 9th Cir. 1988), the Bankruptcy

10  Appellate Panel of the Ninth U.S. Circuit Court of Appeals held that it was

11  permissible for a Bankruptcy Court to authorize (non-final) fee payment to

12  professionals on a summary application procedure, allowing them to receive

13  compensation each month without prior court approval. This Court's Order in the

14  instant matter [Dkt. 243] was entered in accord with this authority.

15      As the Court determined on Friday, July 19, 2019, however, fraudulent

16  conduct by the Debtors required an immediate suspension of these *Knudsen* Orders.

17  On July 22, 2019, a formal order suspending the procedure whereby Hogan Lovells

18  could pay itself without prior court approval was signed, and entered the next day.

19  [Dkt. 339.] Thus, any authority under which Hogan Lovells would be allowed to

20  follow the summary monthly application procedure has vanished and, for this

21  reason alone, payment of the fees claimed by this applicant for the month of May,

22  2019, should be denied. Moreover, at the same hearing, this Court ordered

23  appointment of a Trustee in the Dawber Estate. As a result of the Chapter 11

24  Trustee's appointment, counsel to the former DIP lost the right to be compensated by

25  the estate. *Lamie v. United States Trustee* (2004) 540 U.S. 526, 534-535. While still

26  technically representing Class War, the Trustee herein will have authority to determine

27  whether or not that engagement should continue.

28      For numerous reasons, some of which are explained herein, Schindler

5

respectfully submits that Hogan Lovells should not be permitted to continue in that role either.  In any event, the recent revelations to this Court by its Examiner reveal that Hogan Lovells' services do not satisfy the requirements of 11 U.S.C. section 330 and, therefore, no further compensation should be payable to this professional.[4]

Specifically, 11 U.S.C. section 330 provides, in pertinent part:

(a)(3) in determining the amount of reasonable compensation to be awarded to [a] … professional persons, the court shall  consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or
(ii) services that were not--
     (I) reasonably likely to benefit the debtor's estate; or
     (II) necessary to the administration of the case.

---

[4]  By this phraseology, Schindler by no means infers that Hogan Lovells should be entitled to retain the fees it has already milked from the Debtors.  In fact, at the appropriate time, it is respectfully submitted that disgorgement of its exorbitant fees will be appropriate.

1    In taking these factors into account, and in light of all other relevant

2    considerations, Hogan Lovells is not entitled to the money it seeks in this instance,

3    and frankly did not legitimately earn what it has already been paid.

4    Specifically, as established by Exhibit 9 to the Vaughn Declaration filed on

5    Tuesday, July 23, 2019 [Dkt. 243], it appears Hogan Lovells was involved in what

6    may charitably be described as questionable conduct by backdating a resignation

7    letter to give the false impression that the Chief Operating Officer of its client,

8    Class War, had resigned earlier than the event actually occurred.  What reason

9    could there be for participating in – perhaps orchestrating – such conduct?  The

10    most logical inference is that this was done to protect Matt Roberts from the claim

11    that, while an officer of Class War, he contemporaneously engaged in a business

12    (Faction) in direct competition with Class War, Hogan Lovells' client.  If this was

13    indeed what occurred, such behavior would be a patent breach of the firm's

14    fiduciary duties to Class War, which would disqualify Hogan Lovells from

15    representing any party in this case and have numerous other consequences.

16    Second, and perhaps more importantly, the representations upon which all

17    three Applications to employ Hogan Lovells were based are false.  As illustrated

18    above, each such Application represented that Exhibit 1 to the respective Turrill

19    declaration was a pre–petition Engagement Letter between Hogan Lovells and Jesse

20    Dawber (in addition to Class War).  Review of the Engagement Letter, however,

21    reveals that *Hogan Lovells never obtained a written engagement letter for*

22    *representation of Mr. Dawber*, a violation of the Rules of Professional Conduct, as

23    the first page of Exhibit 1 actually recognizes.  Specifically, the transmittal letter

24    which constitutes the first page of Exhibit 1 recites that:

25    We are pleased that Class War, Inc. (the "Company") has engaged
      Hogan Lovells US LLP **to represent the Company** regarding its
26    litigation with Jack Schindler and related matters…[and that the
      Engagement Letter is] required by the applicable Rules of Professional
27    Conduct.  [Dkt. 150, page 21; emphasis added.]

28

7

1   There is no question this letter does not constitute an engagement to represent Jesse

2   Dawber as an individual, and the contrary assertion made to this Court by the

3   Debtors and Hogan Lovells on multiple occasions is simply false in every instance.

4   Indeed, on the second page of Exhibit 1, Mr. Dawber signs for Class War, Inc. as

5   "OWNER."  Hogan Lovells cannot contend otherwise; its own Engagement Letter

6   says, on the third page [Dkt. 122, page 18, Dkt. 150, page 23, paragraph 3] that:

7       … [O]ur representation of a corporation… or other entity ***does not
8       include a representation of the individuals or entities that are
        shareholders***, officers, directors… of such entities or their interests in
9       such entities. (Emphasis added.)

10  Thus, unless documents in this respect are undisclosed and there is some *other*

11  Engagement Letter, Hogan Lovells has **never** had an engagement agreement with

12  Jesse Dawber and, most likely, never obtained a conflict waiver or informed

13  consent to the multiple representation from him or, for that matter, Class War

14  either.  It is respectfully submitted this is why the Applications obliquely mention

15  that Hogan Lovells "may" have a claim for prepetition fees – because they were

16  fully aware when filing these Applications that they had no Engagement Agreement

17  with Jesse Dawber and wanted to reserve the right to file a Proof of Claim seeking

18  recovery against his Estate based upon quantum meruit.

19      Finally, with respect to the $150,000 purported "retainer" paid to Hogan

20  Lovells three days after the State Court Verdict, this sum is approximately *4 times*

21  *the agreed amount*.  Unless there is a different Engagement Agreement with Class

22  War, or *some* Engagement Agreement with Jesse Dawber which provides otherwise

23  and was somehow not disclosed in connection with the three Applications, the only

24  retainer to which Class War contractually-agreed was **$40,000, not $150,000**.  [Dkt.

25  122, page 19, Dkt. 150, page 24, paragraph 5.]

26      Thus, to the objective observer, it appears the $150,000 sum paid to Hogan

27  Lovells three days after the State Court Verdict was yet another pre-petition

28  mechanism to deplete the Debtors' funds in order to avoid ever paying creditors,

including Mr. Schindler. Participation in such conduct militates in favor of a ruling denying Hogan Lovells any further compensation and, at the appropriate time, compelling disgorgement of the substantial funds they have already received.

### III.

### CONCLUSION

For all of these reasons, creditor Jack Schindler objects to the payment of any further compensation to Hogan Lovells, and prays that this Court require said firm to disclose all bills for which it has received compensation subsequent to the filing of the Dawber Chapter 11 Petition. Specifically, Hogan Lovells should be ordered to produce its November 16, 2018 bill for $58,400.81 and January 15, 2019 invoice for $24,743.09, both of which were paid out of the inflated $150,000 "retainer" which (as verified by Mr. Turrill himself) this firm obtained a mere three days after the State Court Verdict. Presumably, one or the other of these bills will disclose exactly what Hogan Lovells did with respect to the Exhibit 9 backdated resignation letter, the purpose thereof, and for whom they were really working at the time.

Respectfully submitted,

Dated: July 26, 2019                    VAUGHN & VAUGHN


By:      /s/ DONALD A. VAUGHN
         Attorneys for JACK SCHINDLER

*In re Jesse Dawber, Case No. 18-06044-LT11*
*Jointly Administered with Case No. 19-00293-LT11*

### **PROOF OF SERVICE**

I, Monica Reitano, declare as follows:

I am a citizen of the United States and am employed in the County of San Diego, California. I am over the age of 18 and not a party to the within action. My business address is 501 West Broadway, Suite 1770, San Diego, California 92101. On July 26, 2019, I served the following document:

**OBJECTION TO HOGAN LOVELLS MONTHLY FEE STATEMENT #3 FOR THE PERIOD FROM MAY 1, 2019 THROUGH MAY 31, 2019**

on the parties in this action as follows:

Michael D. Breslauer on behalf of Debtor Class War, Inc.
mbreslauer@swss.com

John W. Cutchin
jcutchin@san.rr.com

Jesse S. Finlayson, Court-Appointed Chapter 11 Examiner
jfinlayson@ftrlfirm.com

M. Douglas Flahaut on behalf of Debtor Jesse Wayne Dawber
flahaut.douglas@arentfox.com

Lauren N. Gans on behalf of STFU Global PTE LTD
lgans@shensonlawgroup.com

Todd S. Garan on behalf of Creditor Bank of America
tgaran@aldridgepite.com

Aram Ordubegian on behalf of Debtor Jesse Wayne Dawber
ordubegian.aram@arentfox.com

Jonathan S. Shenson on behalf of STFU Global PTE LTD
jshenson@shensonlawgroup.com

Christopher K.S. Wong on behalf of Debtor Jesse Wayne Dawber
christopher.wong@arentfox.com

David A. Ortiz on behalf of the United States
david.a.ortiz@usdoj.gov

United States Trustee
ustp.region15@usdoj.gov

Tiffany L. Carroll
tiffany.l.carroll@usdoj.gov

Elizabeth C. Amorosi
Elizabeth.c.amorosi@usdoj.gov

[X]    **BY CM/ECF NOTICE OF ELECTRONIC FILING** by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth below as identified on the service list obtained from this Court on the Electronic Mail Notice List.

[ ]    **BY MAIL:** I am readily familiar with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business pursuant to Code of Civil Procedure §1013(a).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I executed this Proof of Service on July 26, 2019, at San Diego, California.

**Monica Reitano**

VAUGHN & VAUGHN